### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA SHOTWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CV-0313-CVE-PJC |
| ) | |
| CROCS RETAIL, INC., f/k/a CROCS, INC., ) | |
| and MICHAEL MARGOLIS, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Now before the Court is Defendant Michael Margolis' Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Dkt. # 12). Defendant Michael Margolis ("Margolis") asserts that he is not a resident of the state of Oklahoma and that this Court lacks personal jurisdiction over him.

### I.

Plaintiff Donna Shotwell ("Shotwell") is a resident of Oklahoma. She alleges that she owned a company called USA Docks, Inc. ("USA Docks"), and she attended the Dallas Boat Show ("Boat Show") on July 11, 2003 to work a booth for USA Docks. While at the Boat Show, Margolis approached Shotwell about selling Crocs Retail Inc. ("Crocs") products in Oklahoma. At the time, Crocs did not have a representative working in Oklahoma and plaintiff alleges that Crocs was eager to quickly introduce its products into the Oklahoma market. Crocs manufactures shoes that are specifically designed for and marketed toward the water industry and the health care industry. Shotwell alleges that her experience as owner of USA Docks and her connections in the water industry made her a prime candidate to sell Crocs shoes in Oklahoma. She claims that Margolis

approached her to sell Crocs products because Shotwell could "inject the [the Crocs] product line quickly into the Oklahoma market." Dkt. # 2, at 4.

According to plaintiff, she entered an oral contract with Margolis with the understanding that Margolis was acting on behalf of Crocs.[1] Shotwell claims that she agreed to sell Crocs products in Oklahoma and provide other services for Crocs and, in exchange, Crocs agreed to pay plaintiff a $3 commission for each pair of Crocs shoes sold in Oklahoma.[2] However, Shotwell alleges that Crocs has not paid her for her services, even though Shotwell claims that she developed the Crocs product lines in Oklahoma. Shotwell alleges that Crocs disclosed the exact number of its shoes sold in Oklahoma, and she claims that Crocs owes her over $300,000 in unpaid commissions. Plaintiff filed this lawsuit alleging claims for breach of contract, failure to pay commissions, and fraud.

Margolis filed this motion to dismiss on the basis that he does not have sufficient minimum contacts with Oklahoma to allow the Court to exercise personal jurisdiction over him. He submitted an affidavit stating that he is a resident of Colorado and he has never even visited the state of Oklahoma. He claims that he does not conduct any business in Oklahoma and the only contact he

---

[1]  The complaint contains contradictory allegations about when the oral contract was formed. In paragraph 12 of the complaint, plaintiff alleges that "[o]n or about July 11, 2003, Plaintiff and Defendants' agent Mike Margolis entered into a contract." Dkt. # 2, at 2. Later, plaintiff alleges that Margolis did not offer her a sales position until he had "several conversations with Plaintiff." Id. at 4. Based on her prayer for relief, it appears that plaintiff is seeking commissions from July 11, 2003 and, for the purposes of ruling on Margolis' motion to dismiss, the Court will construe the complaint to allege that the contract was entered on July 11, 2003.

[2]  Plaintiff has produced two checks from Western Brands, LLC d/b/a Crocs Footwear that plaintiff states were commission checks. However, these checks are not from Crocs Retail, Inc. or Crocs, Inc. nor were the checks signed by Margolis. For the purposes of the Court's ruling on this motion, the Court will not consider the checks as evidence of Margolis' contacts with Oklahoma.

had with Shotwell on July 11, 2003 was at the Boat Show in Dallas, and he had no contact with her <u>prior</u> to that day. He is silent as to contacts <u>after</u> that day. Shotwell has provided an affidavit stating that she has talked to Margolis on the phone numerous times after July 11, 2003.[3] She claims that Crocs hired another Oklahoma representative without telling her, but she continued to market Crocs products. Based on representations by Margolis, Shotwell continued to market Crocs products even though several retailers told Shotwell that she was no longer an authorized Crocs representative.

## II.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant. <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a <u>prima facie</u> showing of personal jurisdiction to defeat the motion." <u>Id.</u> (citations omitted). "The plaintiff may make this <u>prima facie</u> showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." <u>Id.</u> at 1091. "In order to defeat a plaintiff's <u>prima facie</u> showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted at true to the extent they are uncontroverted by the defendant's affidavit. <u>Taylor v. Phelan</u>, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual

---

[3] Although not mentioned in her affidavit, Shotwell has produced a July 27, 2003 e-mail from Margolis to plaintiff discussing ordering procedures and updating plaintiff on recent developments with Crocs products. The Court will consider this e-mail from Margolis as a contact with Oklahoma for purposes of the Court's personal jurisdiction analysis.

disputes must be resolved in the plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection.  Id.

To demonstrate the existence of personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution.  See OKLA. STAT. tit. 12, § 2004(F).  "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state."  Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'"  Intercon, 205 F.3d at 1247  (quoting World-Wide Volkswagen, 444 U.S. at 291).  The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction.  A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"  Intercon, 205 F.3d at 1247 (quoting Burger King, 471 U.S. at 472).  "When a plaintiff's cause of action does not arise directly from a

defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

### III.

Margolis asserts that the Court may not exercise personal jurisdiction over him and he raises two arguments in support of his motion. He argues that any contacts he had with plaintiff were on behalf of Crocs and, under the fiduciary shield doctrine, those contacts may not be imputed to Margolis personally. He argues that he does not have sufficient minimum contacts with Oklahoma for the Court to exercise general[4] or specific jurisdiction over him and he should be dismissed as a party for lack of personal jurisdiction.

### A.

Margolis claims that he was acting in his capacity as an officer of Crocs when he approached plaintiff about working as a Crocs representative, and his contacts with plaintiff should not be attributed to him personally. Even assuming that the Court has personal jurisdiction over Crocs, Margolis argues that the Court does not have jurisdiction over him because his employer's contacts with this forum should not be attributed to him. Plaintiff responds that it would be inequitable to apply the fiduciary shield doctrine in this case, because Margolis perpetrated a fraud through his actions. Plaintiff claims that Margolis can be held personally liable for his tortious conduct, because he directly participated in the alleged conduct giving rise to this lawsuit.

---

[4]  Plaintiff makes no attempt to argue that Margolis has sufficient contacts with Oklahoma unrelated to this litigation, nor are there any allegations that would support a finding that the Court could exercise general jurisdiction over Margolis.

5

Under the fiduciary shield doctrine, "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum states." Ten Mile Indus. Park. v. Western Plains Service Corp., 810 F.2d 1518, 1527 (10th Cir 1987); see also McClelland v. Watling Ladder Co., 729 F. Supp. 1316, 1319 (W.D. Okla. 1990) ("jurisdiction over corporate officers or agents must ordinarily be based on their personal, rather than corporate, contacts with the forum - that is, jurisdiction over such corporate representatives cannot be predicated on jurisdiction over the corporation itself."). While an employee's contacts with a forum should not be judged based on his employer's activities, his status as an employee "does not somehow insulate [him] from jurisdiction" and "[e]ach defendant's contacts with the forum state must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).

Plaintiff claims that courts have recognized a fraud exception to the fiduciary shield doctrine that allows a court to exercise personal jurisdiction over a defendant if the defendant personally took part in the commission of a tort, even if he acted on behalf of a corporation, and sufficient minimum contacts exist that permit the Court to exercise jurisdiction of the defendant. All American Car Wash, Inc. v. Nat'l Pride Equip., 550 F. Supp. 166, 169 (W.D. Okla. 1981). The Tenth Circuit has held that "employees of a corporation may themselves by subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." Application to Enforce Administrative Subpoenas Duces Tecum of the Securities and Exchange Commission, 87 F.3d 413, 418 (10th Cir. 1996) (citing Calder, 465 U.S. at 790 (1984)). In particular, if the defendant was acting to further his own interests instead of those of the corporation,

6

it may not be appropriate to apply the fiduciary shield doctrine. Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898, 912 (N.D. Ill. 2003).

When courts have attributed a corporate officer's activities on behalf of the corporation to the defendant individually, a common factual concern is whether the corporation was used as shell to perpetrate fraud on the plaintiff. See Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002); Stuart v. Spademan, 772 F.2d 1185, 1198 (5th Cir. 1985); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Some courts have refused to apply the fiduciary shield doctrine when the defendant is also a shareholder of the corporation, because this implies that the defendant has a direct financial interest in the corporation's business dealings. United Fin. Mortgage Corp. v. Bayshores Funding, 245 F. Supp. 2d 884, 895 (N.D. Ill. 2002); Zeman v. Lotus Heart, Inc., 717 F. Supp. 373 (D.Md. 1989). As this is an equitable doctrine, courts have a great deal of leeway to apply or reject the fiduciary shield doctrine based on the facts of a particular case. Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1017 (10th Cir. 1990); Columbia Briargate Co. v. First Nat'l Bank in Dallas, 713 F.2d 1052, 1065 (4th Cir. 1983); Marine Midland Bank, 664 F.2d at 903.

In this case, the Court finds that it would not be equitable to rigidly apply the fiduciary shield doctrine because of the nature of plaintiff's allegations. Based on the allegations of the complaint, it appears that Margolis was plaintiff's sole contact with Crocs and that plaintiff acted in reliance on Margolis' representations. In fact, it does not appear that plaintiff had any direct interaction with Crocs other than her conversations with Margolis. When a corporate officer intentionally directs his actions towards the forum state and is the primary participant in the alleged wrongdoing, those actions can form the basis for asserting personal jurisdiction over the corporate officer. Smith v.

Cutler, --- F. Supp. 2d ---, 2007 WL 2323938, *5 (D.N.M. July 18, 2007); Dodson Int'l Parts, Inc. v. Altendorf, 181 F. Supp. 2d 1248, 1255 (D. Kan. 2001). This does not relieve plaintiff of the burden to prove that Margolis has sufficient minimum contacts with Oklahoma to support this Court's ability to enter a judgment against defendant. However, for purposes of this motion to dismiss only, the Court will consider Margolis' contacts with plaintiff in his corporate capacity as a basis to assert personal jurisdiction over him.

**B.**

The Court must determine if, based on the allegations of the complaint and the affidavits submitted by the parties, plaintiff can establish a prima facie showing that this Court should exercise personal jurisdiction over Margolis. Plaintiff argues that defendant purposefully directed his activities toward Oklahoma by creating an ongoing contractual obligation between plaintiff and Crocs that the parties intended would be performed in Oklahoma. If the Court is inclined to grant defendant's motion, plaintiff asks the Court to stay its ruling until plaintiff has had an opportunity to conduct additional discovery concerning Margolis' contacts with Oklahoma.

Based on the allegations of the complaint and the unrefuted statements in plaintiff's affidavit, it is clear that Margolis has very few contacts with Oklahoma. The parties do not dispute that Margolis talked to plaintiff on July 11, 2003 at the Boat Show in Dallas, Texas. Margolis denies that he had any contact with plaintiff prior to that day. He is silent as to contacts after that day. In her affidavit, plaintiff asserts that "Mr. Margolis and I spoke on numerous occasions regarding my position with Crocs. All of these conversations, excluding the initial conversation in Texas, occurred while I was in Oklahoma for the purposes of promoting and selling Crocs brand shoes only in the State of Oklahoma." Dkt. # 19, Ex. 2, at 1. Plaintiff has produced an e-mail from Margolis

Case 4:07-cv-00313-CVE-PJC   Document 24 Filed in USDC ND/OK on 08/23/07   Page 9 of 11

to plaintiff, dated July 27, 2003, instructing plaintiff on how to use Crocs order forms and providing general information about selling Crocs products. After learning that she was not the exclusive Crocs agent in Oklahoma, plaintiff states that she called Margolis to determine if she was still Crocs' representative in Oklahoma. Id.

Plaintiff argues that Margolis' contacts, although few, were purposefully directed towards an Oklahoma resident and he created an ongoing contractual relationship with an Oklahoma resident. Plaintiff also argues that these contacts provide a basis for a claim for fraud, and the Court should consider the same facts sufficient to make a prima facie showing of personal jurisdiction. Kal Drilling, Inc. v. Buray Energy Int'l, LLC, 2007 275975 (W.D. Okla. Jan. 26, 2007). In order to state a claim for fraud under Oklahoma law, plaintiff must allege the following elements:

> (1) a false misrepresentation of a material fact, (2) made as a positive assertion either known to be false or recklessly made without knowledge of the truth, (3) made with the intention of causing the other party to act, and (4) which is relied on by the other party to his or her own detriment.

Gish v. ECI Servs. of Oklahoma, Inc., 162 P.3d 223, 228 (Okla. Civ. App. 2006). Plaintiff has alleged sufficient facts to state a claim for fraud and, more specifically, that Margolis committed the acts giving rise to fraud.

The Court finds that plaintiff has made a prima facie case that this Court has personal jurisdiction over Margolis. At this stage of the proceedings, the Court is compelled to construe the facts in a light most favorable to plaintiff. Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984). Based on the allegations of the complaint and plaintiff's affidavit, Margolis created a contractual relationship with an Oklahoma resident and he allegedly understood that the contract would be performed in Oklahoma. Burger King Corp, 471 U.S. at 479 (Michigan defendant purposefully negotiated a long-term contract with a Florida corporation, and Florida

courts could exercise personal jurisdiction over defendant); Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005) (interstate contractual relationships can create personal jurisdiction when necessary services to the contract were intended to be performed in the forum state); United States v. Swiss American Bank, Ltd., 274 F.3d 610 (1st Cir. 2001) (the existence of a contract does not automatically establish minimum contacts, but evidence that the future consequences of the contract would be performed in the forum state can show that defendant reached out to the jurisdiction). Plaintiff alleges that she had several conversations about with Margolis after she had returned to Oklahoma, and these conversations concerned the subject matter of this lawsuit. Rambo, 839 F.2d at 1418 (even a single phone call or letter, if related to the subject matter of the lawsuit, can provide personal jurisdiction over an out of state defendant). Plaintiff has also produced an e-mail from Margolis to plaintiff discussing Crocs ordering procedures and updating plaintiff on Crocs products. Plaintiff has pled sufficient facts to establish specific personal jurisdiction over Margolis, and Margolis has not shown that it would be unreasonable for this court to exercise personal jurisdiction over him. OMI Holdings, Inc, 149 F.3d at 1091.

However, the Court will permit defendant to reurge his defense of lack of personal jurisdiction after discovery is completed. Cornice Technologies, Inc. v. Affinity Dental Prods., Inc., 2005 WL 1712124, at *7 (D. Colo. July 21, 2005) (denying motion to dismiss for lack of personal jurisdiction without prejudice to allow parties to conduct discovery); Dodson Int'l Parts, 181 F. Supp. 2d at 1251 (if motion to dismiss for lack of personal jurisdiction is denied, the moving party should be permitted to reurge the motion following discovery). If defendant chooses to reurge his defense, plaintiff must establish by a preponderance of the evidence that the exercise of personal

jurisdiction over defendant is proper.  Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp. 2d 1074, 1076 (D. Kan. 1998).

**IT IS THEREFORE ORDERED** that Defendant Michael Margolis' Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Dkt. # 12) is **denied without prejudice.**

**DATED** this 23rd day of August, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT